IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

UNITED STATES OF AMERICA       :
      :
v.       :   CASE: 5:15-CR-0005
      :
JONATHAN VERNON       :
      :

---

MOTION TO SUPPRESS
SEARCH OF 211 PINE NEEDLE ROAD, APARTMENT A

---

Pursuant to FRCP 12(b)(3)(C) and 41(h), Defendant Jonathan Vernon, through counsel, filed a Motion to Suppress evidence gathered in violation of the Fourth Amendment to the United States Constitution and FRCP 41. Specifically, the search of Mr. Vernon's house occurred outside the time frame specified on the warrant.

Factual Background

On March 26,2011, an investigation was started into Vernon regarding child pornography. The Federal Bureau of Investigation in Dallas allegedly downloaded a number of files from an IP address. An administrative subpoena revealed that the IP address was registered to Mr. Vernon at t211 Pine Needle Road, Apartment A, Milledgeville, Georgia. The information was passed on to the local agent, Kimberly Granich, who continued the investigation.

2.

SA Granich verified that Mr. Vernon lived at the address. She also performed surveillance on the apartment and watched Mr. Vernon walk into the apartment.

3.

On June 21, 2011, SA Granich applied for a search warrant in the Middle District of Georgia. Magistrate Judge Charles Weigle issued a search warrant at 3:05 p.m. that day, filed as 5:11-MJ-06-10.

4.

The warrant has a statement authorizing a search in the daytime. In that sentence, there is a parenthetical reference with blanks for the magistrate judge to specify time. In this case, Judge Weigle specified that the search take place between 8:00 a.m. and 6:00 p.m.

5.

SA Granich executed the warrant on June 28, 2011 at 6:05 a.m., as stated in the search warrant return filed with the court in case 5:11-MJ-06-10. Sunrise on June 28, 2011, in Milledgeville, Georgia, was at 6:28 a.m[1]. During the search, computer equipment was seized that resulted in a large number of contraband images being eventually found.

# Legal Argument

"Searches of the dwelling house were the special object of this universal condemnation of official intrusion. Night-time search was the evil in its most obnoxious form." *Monroe v. Pape*, 365 U.S. 167, 210, 81 S.Ct. 473, 496, 5 L.Ed.2d 492 (1961). The day versus night distinction in search warrants has survived because of this very issue, that is, that an unannounced visit by a police force during darkness is much more invasive, and therefore less reasonable, than in daylight. *See also Jones v. United States*, 357 U.S. 493, 498–99, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958) ("it is difficult to imagine a more severe invasion of privacy than the nighttime intrusion into a private home . . . ."). This aversion to searches during the night has been codified in Rule 41, where it says that the "warrant must command the officer to execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time." FRCP 41(e)(2)(A)(ii). Daytime is defined as the hours between 6:00 a.m. and 10:00 p.m.  FRCP 41 (a)(2)(B).

---

1 http://aa.usno.navy.mil/rstt/onedaytableID=AA&year=2011&month=6&day=28&state=GA&place=milledgeville

In cases where the distinction between day and night is clear, courts have routinely suppressed evidence when searches are performed contrary to the restriction on the face of the warrant. *United States v. Myers,* 398 F.2d 896, 897 (3rd Cir. 1968). In *United States v. Myers*, the agents obtained a search warrant for a search of a house at 1:00 a.m. *Id.* at 899. The warrant signed by the magistrate judge stated that the search was to take place during daylight. *Id.* However, at 2:30 a.m., the agents broke into the house to search. *Id.* The court decided that this violated the Fourth Amendment, stating "when the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not a policeman, or a government enforcement agent." *Id.*

More recently, in *Youngbey v. District of D.C.,* this issue reached the district court level. 766 F. Supp. 2Nd 197, 209 (2011). In *Youngbey*, the officers requested a search warrant, and the warrant was granted on a blank form warrant. *Id.* On this form, there was a section for the time of day, stating that the affiant may search "in the daytime/at any time of the day or night." *Id.* However, the judge who granted the warrant did not cross off or circle either of the options. *Id.* Since neither section was struck out, the warrant only authorized a daytime search. *Id.*

Additionally, *United States v. Myers* instructs that the way to determine if the warrant authorizes a particular search is to look at the warrant's "simple and unambiguous language." 398 F.2d 896, 897 (3rd Cir. 1968). Further, the court states that "to find that a warrant which is explicitly limited to daytime searches legalizes search at *any hour of the day or night* would be to disregard the magistrate's actual determination and thus to nullify the requirement of a prior impartial determination that a particular search will be reasonable." (emphasis added)

In all other search situations, the "simple and unambiguous language" of the warrant limits the scope of the warrant. Since *Marron v. United States*, a warrant must particularly describe the things to be seized with no discretion left to the officer. 275 U.S. 192, 196 (1927). A violation of this scope is an unreasonable search, and violates the Fourth Amendment if it is unreasonable under all the circumstances. *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir. 1982).

A footnote to *United State v. Burke* is particularly illustrative. 517 F.2d 377 (2nd Cir. 1975). In footnote 14, the Second Circuit compared two different night searches. After approving of the idea that a warrant that says daytime on its face cannot authorize a nighttime search, the court states that "similarly when a warrant is executed when the specific period is elapsed, there is usually no way to tell if the issuing officer would have approved this."

While the Fourth Amendment governs this area of law, the Federal Rule of Criminal Procedure 41 lays out the method by which warrants and searches pursuant to warrant should be done. Violations of Rule 41 do not rise to suppressible issues unless the defendant is able to present legal prejudice. *United States v. Bonner*, 808 F. 2d 864, 869 (1st Cir. 1986). Legal prejudice occurs when either the search would not have occurred or would not have been so abrasive without the violation. *Id.* And the exclusionary rule, being a "blunt object," should only be used "when remedial objectives are best served, i.e., to deter illegal police conduct, not mistakes by judges and magistrates." *Id.*

Fourth Amendment violations are cured through the exclusionary rule. *United States v. Martin,* 297 F.3d 1308, 1312 (11th Cir. 2002). To safeguard the Fourth Amendment rights, evidence that has been gathered in violation of the Fourth Amendment "may not be used by the government in a subsequent criminal prosecution." *Id.* The purpose of the exclusionary rule is to deter illegal police conduct—"to guard against police officers who purposely leave critical

facts out of search warrant affidavits because these facts would not support a finding of probable cause." *United States v. Martin*, 297 F.3d 1308, 1320 (11th Cir. 2002).

The good faith exception does not apply in this case. The good faith exception allows evidence gathered in an otherwise unconstitutional manner, and therefore subject to exclusion, to be used against the defendant. *United States v. Leon,* 468 U.S. 897, 922 (1984). The exception applies when an officer is reasonably relying on an otherwise deficient search warrant.

# Factual Application

In this case, the warrant signed by Judge Weigle had two blanks inside parenthesis to specify a more restrictive time than merely daytime. Judge Weigle chose to fill those blocks with numbers, restricting the warrant's daytime hours to 8:00 a.m. to 6:00 p.m. The agent took the warrant, and on June 28, knocked on Mr. Vernon's door at 6:05 a.m. That day, the sun did not rise until 6:28 a.m. Because this time was not authorized by the plain language on the warrant, the search violated the Fourth Amendment. And, as stated in the footnote in *Burke,* there is no way to tell if the issuing officer, Judge Weigle, would have approved this intrusion at such an early time.

Additionally, considering that nighttime searches, that is, searches done when people are expected to be asleep, and it is dark outside, is "evil in its most obnoxious form," and that regardless of the reason for the restriction on the time, Judge Weigle expressly authorized execution at another time of the day, this search was significantly more abrasive than had it been done during the hours specified on the warrant.

Finally, the exclusionary rule should apply in this case because it does satisfy the purpose of deterring illegal police conduct—that is, ignoring the instructions on the face of a warrant. Regardless of why—be it a careless mistake of failing to read the warrant being served, or

incorrectly assuming that the warrant said 6:00—the officer's conduct is the issue here, not the incorrect or unclear instructions of the magistrate judge's decision. And the good faith exception to the exclusionary rule should not apply, since the issue here is not related to whether the warrant was or was not deficient in some way, and that the officer justifiably relied on it. Instead, it is related only to whether the officer diligently followed the instructions of the magistrate judge. Officers should be held to a high standard, and part of that standard is that they should be expected to follow the plain language directions on the face of a warrant.

# Conclusion

In conclusion, the evidence gathered as a result of the search should be suppressed.

November 20, 2015

s/Keith E. Fitzgerald
KEITH E. FITZGERALD
Attorney for Defendant
Hogue & Hogue, LLP
Post Office Box 1795
Macon, Georgia 31202
(478) 750-8040
State Bar No. 360030

**CERTIFICATE OF SERVICE**

I hereby certify that by my signature I have served a copy of this motion on all interested parties by filing it electronically with CM/ECF

November 20, 2015.

s/Keith E. Fitzgerald
KEITH E. FITZGERALD